*-21 PAULINE NEWMAN, Circuit Judge,
concurring in part and dissenting in part.
I concur in Parts I.A and II., I dissent, respectfully, from Part I.B, for it is contrary to the General Agreement on Tariffs and Trade (GATT), as implemented by the statute, to treat the rebated Mexican tax .as profit, and dutiable.
The issue is focussed on the Customs calculation of the computed value of tomato paste manufactured by the Campbell Soup subsidiary Sinalopasta in Mexico and exported to the United States. The computed value depends on the treatment of rebates of Mexican tax under the CEDIS program. Si-nalopasta paid the Mexican tax when it purchased the tomatoes, and the Mexican government rebated the tax when Sinalopasta exported the tomato paste.
The Customs Service required that (1) the tax rebates could not be deducted from the cost of materials, and (2) the rebates must be included as “profit” in the computed value calculation. The panel majority holds, and I agree, that the tax rebates are properly deducted from the cost of materials. However, I do not share the conclusion that the tax rebates must be included as profit on sales of the exported tomato paste, thus raising the dutiable value by the amount of the tax rebates. The statute requires otherwise.
19 U.S.C. § 1401a(e)(l) provides the formula for determining the computed value of imported merchandise for duty assessment purposes:
(1) The computed value of imported merchandise is the sum of—
(A) the cost or value of the materials and the fabrication and other processing of any kind employed in the production of the imported merchandise;
(B) an amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States;
(C) any assist, if its value is not included under subparagraph (A) or (B); and
(D) the packing costs.
Subparts (C) and (D) are not relevant to this case. Therefore, for purposes of analyzing whether the CEDIS tax rebates should be included in profit for the computed value calculation, we are concerned only with the (A) cost of materials and (B) profit. The statute provides guidance concerning calculation of (A) and (B):
(2) ■ For purposes of paragraph (1)— '
(A) the cost or value of materials under paragraph (1)(A) shall not include the amount of any internal tax imposed by the country of exportation that is directly applicable to the materials or. their disposition if the tax is remitted or refunded upon the exportation of the merchandise in the production of which the materials were used; and
(B) the amount for profit and general expenses under paragraph (1)(B) shall be based upon the producer’s profits and expenses, unless the producer’s profits and expenses are inconsistent with those usually reflected in sales of merchandise -of the same class or kind as the imported merchandise that are made by producers in the country of exportation for export to the United States, in which case the amount under paragraph (1)(B) shall be based on the usual profit and general expenses of such producers in such sales, as determined from sufficient information.
19 U.S.G. § 1401a(e)(2).
I agree with the panel majority that subsection (2)(A) requires that the rebated tax be deducted from the cost of materials. This produces a corresponding decrease in computed value under § 1401a(e)(l).
However, by requiring Sinalopasta to add the tax rebate to its profit, the result is the same as if there had been no rebate. The computed value is the same as if Sinalopasta had paid the full Mexican tax on raw materi- *-20 ais and received no rebate. This contravenes not only the statute, but the purpose of the GATT provision whereby nations can provide a tax incentive for exports without finding that the incentive has been neutralized by the importing nation.
The panel majority states that “the Court of International Trade correctly decided that sections 1401a(e)(l)(B) and (2)(B) permitted no adjustment to Sinalopasta’s profit and general expenses as reported in its financial records.” I can not find such subject matter in sections 1401a(e)(l)(B) and (2)(B). Sinalo-pasta accounted for the rebated Mexican tax under “miscellaneous profit and loss.” Use of such a catchall accounting category can not override the application of a United States statute governing Customs’ treatment. The accounting form does not convert the CEDIS rebates into profit when they are not profit, but a remittal of taxes paid. A cost not incurred because it is rebated does not automatically establish a corresponding increase in profit.
The statute requires that profit and general expenses be “based upon the producer’s profit and expenses” in the computed value calculation. The statute provides for the reduction of the cost of materials by the amount of the rebates; it does not thereafter neutralize the reduction by adding the rebates to profit. In M & M/Mars Snackmaster Div. of Mars Inc. v. United States, 7 C.I.T. 249, 587 F.Supp. 1075 (1984), the Court of International Trade discussed how a similar tax rebate in the European Economic Community should be treated under a similar statute for calculating the cost of production:
In those Customs cases involving drawbacks, rebates, and refunds, there has been no suggestion that the payments received were to be construed as profits in determining the cost of production....
... No relationship exists between the rebate made by the United Kingdom to Mars, conforming to the general policy of equalizing the world sugar price with the EEC sugar price, and the determination of profit as contemplated by the cost of production statute....
587 F.Supp. at 1078-79. The panel majority dismisses this case as “inapposite” because it deals with a different statute. However, the tariff principle is the same. It is necessary to consider whether the rebates are, in fact, profit on the export sales, or simply a reduction in the cost of production. The cost of production statute at issue in M & M required that profit be a minimum of 8% of costs and expenses; the fact that the producer’s actual profit figures were not used does not convert the rebates into profit. The court held that the rebates were not properly considered as profit in determining the cost of production.
Further, inclusion of the rebates in profit is inconsistent with the United States’ obligation under the GATT. Article VII, section 3 of the GATT proscribes the imposition of duties on internal taxes to which the manufacturer is entitled to a refund:
§ 3. The value for Customs purposes of any imported product should not include the amount of any internal tax, applicable within the country of origin or export, from which the imported product has been exempted or has been or will be relieved by means of a refund.
General Agreement on Tariffs and Trade, Oct. 30, 1947, 61 Stat. A-3, T.I.A.S. 1700, 55 U.N.T.S. 194. The panel majority states that this claim of inconsistency with the GATT “was not raised below and, in any event, is not determinative,” citing Suramerica de Aleaciones Laminadas C.A. v. United States, 966 F.2d 660, 667-68 (Fed.Cir.1992) for the proposition that the “GATT does not trump domestic legislation; if the statutory provisions at issue here are inconsistent with the GATT, it is a matter for Congress and not this court to decide and remedy.” However, the statute is not inconsistent with the GATT. It is the holding that the rebates must be included in profit that is inconsistent with the GATT.
The GATT requires that the rebates are not included in the valuation for Customs’ purposes. This is • negated by the court’s holding that the rebates are included in *-19 profit for Customs’ purposes. There is no suggestion that Congress enacted a statute contrary to the GATT provision. To the contrary, the statute requires an accounting procedure that reduces the cost of the goods; but on the court’s requirement that the rebate be added back, as a separate item of profit, the computed value for Customs’ purposes is as if there had been no rebate, and the trade benefit of the CEDIS program, as protected by the GATT, is eliminated.